IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JIMMY JACKSON #1306197 | § | |
| | § | |
| V. | § | W-24-CA-464-ADA |
| | § | |
| GENE MILLER, et al. | § | |

### ORDER

Before the Court are Plaintiff's complaint (#1) and more definite statement (#14). Plaintiff is proceeding pro se and in forma pauperis.

STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice – Correctional Institutions Division. After reviewing Plaintiff's complaint, the Court ordered him to file a more definite statement specifying what happened and how each defendant was personally involved.

Plaintiff alleges that on July 11, 2023[1], he was passing out meals to other inmates when an inmate stole two bags out of the food crate. Plaintiff told him that was not allowed and the inmate became upset. Plaintiff claims that, while he was waiting for

---

[1] In his more definite statement, Plaintiff lists the date as July 11, 2024, but the grievances he includes in his original complaint indicate that the incident occurred in 2023.

1

Sgt. Foley to address the issue, the other inmate obtained a sharp object and approached Plaintiff. Plaintiff tried to get away, but the door was locked and Plaintiff was stabbed in the back and head 28 times. After the incident, Plaintiff picked up the weapon that had been used against him and turned it over to Foley.

Plaintiff indicates that Sgt. Foley told him to continue helping pass out meals and then Lt. Strong told Foley to take Plaintiff to the infirmary. Plaintiff claims that the nurse failed to provide adequate medical treatment because "all they did was wipe my head and back" to stop the bleeding. Plaintiff claims that he now suffers from PTSD and receives mental health treatment. Plaintiff also states that he currently is prescribed "psyc meds" and "pain meds." Although Plaintiff reiterates that he was stabbed in his back and head 28 times, and indicates that this causes unspecified "head and back pains," Plaintiff fails to specify his injuries.

Plaintiff claims he was held in protective housing for several days following the stabbing and that Foley released him back into general population on August 8, 2023. Plaintiff also indicates that the assailant was released into general population and that the assailant "harassed" Plaintiff on numerous occasions following the stabbing. Plaintiff fails to specify the harassment, but indicates that he was concerned for his safety.

Plaintiff claims that there should have been an inmate protection investigation (IPI) immediately after the stabbing and that he should have been transferred to another unit. Plaintiff filed several grievances regarding the issue and Plaintiff contends that these grievances were not handled properly by Defendants Gerfen and Sawyer. Plaintiff eventually did have an IPI on September 19, 2023. Plaintiff claims that

Defendant Johnson spoke to him on September 25, 2023, and took Plaintiff's victim statement. After the investigation, a unit transfer was recommended and Plaintiff was transferred to another prison unit more than two months after the stabbing.

Plaintiff sues Warden Gene Miller, Assistant Warden Annette Martinez, Correctional Officer A. Johnson, Correctional Officer Foley, Unit Grievance Investigator A. Gerfen, and Unit Grievance Investigator Jodi Sawyer. Plaintiff contends that he was placed in "constant danger" by the prison administration, namely Miller and Martinez. Plaintiff contends that Johnson was the Safe Prisons Officer and it was her job to investigate the assault.

Plaintiff seeks $10,000 in compensatory damages and $100,000 in punitive damages. Plaintiff also seeks "free medical care from the State of Texas (incarceration and free-world) for the rest of my life." Plaintiff also appears to make a request to press charges against the inmate that stabbed him.

## DISCUSSION AND ANALYSIS

A.   Standard Under 28 U.S.C. § 1915(e)

An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe the plaintiff's allegations as liberally as possible. *Haines v. Kerner*, 404 U.S. 519 (1972). However, the plaintiff's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

B.  <u>Eleventh Amendment Immunity</u>

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994). To the extent Plaintiff is suing them in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984).

C.  <u>No Personal Involvement</u>

Plaintiff fails to allege any personal involvement by Defendants Miller and Martinez. To the extent Plaintiff is asserting Defendants Miller and Martinez are liable due to their supervisory positions those claims are dismissed. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-

4

employee relationship. *Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. Plaintiff identifies no such policies and makes no allegations that Defendants Miller and Martinez were personally involved or that they implemented any policy that led to a constitutional violation. Instead, Plaintiff alleges that he was placed in danger by them because they are a part of the "administration." Furthermore, as discussed below, Plaintiff has failed to allege any constitutional violation whatsoever. Consequently, Plaintiff's claims against Miller and Martinez are dismissed.

D.   <u>Deliberate Indifference and Failure to Protect</u>

Even assuming all of the facts alleged by Plaintiff are true, he has failed to show that any Defendant was deliberately indifferent in failing to protect him. Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Baker v. McCollan*, 443 U.S. 137 (1979). As the United States Fifth Circuit Court of Appeals has observed, "'[I]t is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.'" *Price v. Roark*,

256 F.3d 364, 370 (5th Cir. 2001) (quoting *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983)).

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). In order to establish a failure to protect claim pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) he was held in custody under conditions that posed a substantial risk of serious harm, and (2) that a prison official acted with deliberate indifference to the risk of harm. *Id.* at 834; *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To establish deliberate indifference in the context of the Eighth Amendment, Plaintiff must show that Defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Thus, a prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference. *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838). Mere negligence in failing to protect a prisoner from assault does not establish a constitutional violation. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Plaintiff makes no allegations whatsoever that any Defendant knew of any risk to Plaintiff prior to the stabbing incident on July 11, 2023. The Court specifically asked Plaintiff if any Defendant was aware of a risk of assault prior to the stabbing. Plaintiff responded that, *after* the assault, Defendants placed him in general population, despite the fact that Plaintiff filed multiple grievances for an IPI. Plaintiff also asserts that, upon his return to general population after the incident, he was harassed by his attacker "on numerous occasions." Plaintiff's allegations of a failure to protect appear related solely to the actions of Defendants after the stabbing—namely the length of time it took for him to be given an IPI and transferred to another unit.

Petitioner makes no allegations whatsoever that any Defendant knew that his attacker was harassing him in general population or that any Defendant knew Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff asserts that he filed numerous grievances and he attaches copies of many, if not all, of those grievances to his original complaint. However, nowhere in his grievances does he express concerns about any ongoing harassment. Plaintiff does note in his grievances that "to my understanding the inmate that stab[bed] me is back in [general] population. How is that possible?" Plaintiff also complains that the assailant is a known gang member who should be in restricted housing. Plaintiff states that the assailant was "out of place" in Plaintiff's housing section on August 9 and 11, 2023, however, Plaintiff does not make any complaint about any further harassment from his assailant. Instead, he consistently complains

that the resolution of the stabbing incident and his medical treatment following the incident were insufficient and argues he is entitled to an IPI and transfer.

While Defendants arguably should have been aware of a risk to Plaintiff from being in general population, there are no allegations showing that any Defendant was actually aware of such a risk. There is nothing in Plaintiff's allegations that indicates any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk. *See Farmer*, 511 U.S. at 847. Plaintiff implies that Defendants should have been aware of the risks, but the failure to alleviate a significant risk that a Defendant should have perceived, but did not, is insufficient to show deliberate indifference. *Domino*, 239 F.3d at 756 (citing *Farmer*, 511 U.S. at 838). Furthermore, Plaintiff was eventually given an IPI and transferred, and he does not allege that he suffered any additional physical injuries from the delay in that process.

At most, Plaintiff has alleged facts that indicate negligence and a failure to follow TDCJ policy in implementing an IPI as quickly as possible after the stabbing incident. Instead, the process was delayed approximately two months. As explained above, negligence in failing to protect a prisoner does not establish a constitutional violation. *Adames*, 331 F.3d at 512. In addition, to the extent Plaintiff complains Defendants failed to follow TDCJ policies with regard to conducting an IPI and transferring him immediately following the stabbing incident, he fails to state a constitutional violation. The mere allegation that prison policies were not followed does not state a claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam). At most, Plaintiff has asserted that Defendants were negligent or even grossly negligent in

their actions. But even assuming all of Plaintiff's allegations are true, there is nothing that shows any Defendant was deliberately indifferent.

E.   Medical Treatment

Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. As explained above, to act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837.

While prisoners are entitled to adequate medical care, they are not entitled to the "best medical care money can buy." *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). Claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Similarly, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a cause of action. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In short, a claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. *Id.* at 106. The denial or delay of medical care can rise to the level of a constitutional

violation if it results in substantial harm. *See Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). In order to maintain a claim for delayed medical treatment there must have been deliberate indifference which results in harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

Plaintiff claims that Defendant Foley failed to immediately take Plaintiff to the infirmary following the stabbing, though he indicates that Lt. Strong intervened and Foley did take Plaintiff to the infirmary after some period of time. Plaintiff claims that the nurse failed to provide adequate medical treatment because "all they did was wipe my head and back" to stop the bleeding. Plaintiff states that he does not know who provided or denied him medical care.

Plaintiff claims that he now suffers from PTSD and currently receives mental health treatment. Plaintiff also states that he is currently prescribed medication for mental health and medication for pain. Plaintiff reiterates that he was stabbed in his back and head 28 times and indicates that this causes unspecified "head and back pains." However, Plaintiff fails to specify any particular injuries or symptoms.

Plaintiff arguably claims that Foley delayed his medical treatment immediately following the stabbing. However, there is nothing in Plaintiff's pleadings to show that any delay in his care led to substantial harm. Indeed, Plaintiff fails to allege any harm resulting from his medical treatment whatsoever. Plaintiff indicates that he continues to suffer head and back pain, but he makes no assertion that such symptoms could have been remedied by different medical care. Plaintiff admits that he was provided some medical treatment following the stabbing. Plaintiff also admits that he has continued to

receive medical treatment for his mental and physical injuries. However, Plaintiff contends that the medical care he has received has been insufficient and he believes he is entitled to additional or different care.

Unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give state a claim for deliberate indifference. *Banuelos*, 41 F.3d at 235; *Varnado*, 920 F.2d at 321. Even assuming that Plaintiff's medical care has been insufficient, ineffective, or incomplete, there is nothing in Plaintiff's allegations that indicates any such failures were the result of deliberate indifference. Plaintiff does not allege facts showing that any Defendant was aware of and disregarded an excessive risk to Plaintiff's safety. At most he has alleged negligence, disagreement with medical treatment, or medical malpractice, none of which are constitutional violations.

F.  Grievances

Plaintiff argues that he was unable to receive an IPI or unit transfer until after he pursued multiple grievances. Plaintiff contends that Gerfen and Sawyer failed to resolve his grievances properly. However, Plaintiff admits that, after multiple grievances, he did receive an IPI and unit transfer. Arguably, this indicates that the grievance policy worked as intended and, following Plaintiff's use of the grievance system, he obtained the relief he sought. In any event, Plaintiff does not have a constitutional right to have his grievances resolved to his liking. *Alexander v. Tex. Dep't of Criminal Justice*, 951 F.3d 236, 240 (5th Cir. 2020) (*citing Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding an inmate "does not have a federally protected liberty interest in having

these grievances resolved to his satisfaction.")). Consequently, Plaintiff's claims against Gerfen and Sawyer related to their grievance responses are dismissed.

G. Criminal Charges

While it is not entirely clear from his pleadings, it appears that Plaintiff wishes to pursue criminal charges against the inmate who stabbed him. Plaintiff does not have a constitutional right to have someone criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Furthermore, this Court is not the proper venue for such a request. Plaintiff must contact law enforcement to pursue such requests. Criminal prosecution is not a valid remedy for an alleged civil rights violation.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's complaint is dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e).

It is further **ORDERED** that Plaintiff is warned that if Plaintiff files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

It is finally **ORDERED** that the Clerk shall e-mail a copy of this order and the final judgment to the keeper of the three-strikes list.

**SIGNED** on November 20, 2024

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE